UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

GREAT CLIPS, INC.,

        Plaintiff,

v.                                                    Civil No. 12-1886 (JNE/TNL)
                                                   ORDER

STEVEN J. ROSS and COOL OTTER
GROUP, LLC,

        Defendants.

Plaintiff Great Clips, Inc. ("Great Clips") brought this action against Defendants Steven J. Ross ("Ross") and Cool Otter Group, LLC, seeking a declaratory judgment that Great Clips did not breach an agreement between itself and Defendants. Now before the Court is Defendants' Motion to Transfer pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

Great Clips is a national franchisor of hair care salons. It is a Minnesota corporation with its principal place of business in Minnesota. Starting in 2004, Great Clips and Defendants entered into a series of franchise agreements (collectively, "Franchise Agreements").[1] Pursuant to those agreements, Defendants owned and operated eleven GREAT CLIPS® salons in Texas. Each Franchise Agreement contained a forum selection clause, stating that "[a]ny other legal proceeding involving any dispute between the parties must be venued exclusively and solely in federal or state court in Hennepin County, Minnesota." The clause also stated that the franchisee

---

[1] It appears as though three of the Franchise Agreements were entered into between Great Clips and Defendant Ross. The remaining eight Franchise Agreements were entered into between Great Clips and Defendant Cool Otter Group, LLC ("Cool Otter"). Ross is one of the two members of Cool Otter, and he personally guaranteed Cool Otter's performance under each of Cool Otter's Franchise Agreements.

1

"agree[s] and submit[s] to personal jurisdiction in Minnesota, and hereby waives any rights they may have to contest venue and jurisdiction in Minnesota and any claims that the venue and jurisdiction in Minnesota are invalid."

According to Great Clips, there were numerous problems with Defendants' performance as a franchisee. As a result of these issues, Great Clips decided to terminate the Franchise Agreements. On June 12, 2012, Great Clips and Ross met in Texas, at which time Great Clips delivered to Ross a Notice of Termination of all Franchise Agreements. The Notice provided that Ross could continue to operate the eleven salons for another thirty days, during which time Ross could attempt to sell the salons to Great Clips or to a new or existing Great Clips franchisee.[2] According to Great Clips, Ross refused to acknowledge and agree that he would not oppose the termination. Later that same day, Great Clips filed a lawsuit in the United States District Court for the District of Minnesota seeking a declaratory judgment that Great Clips properly terminated the Franchise Agreements ("Termination Lawsuit," Civil No. 12-cv-1391 (DWF/SER)). Ross was never served with the Complaint from that lawsuit, nor did he become aware of the lawsuit until sometime later.

On June 15, 2012, Great Clips and Defendants entered into an Agreement and Release of Claims ("Settlement Agreement"), and on June 27, 2012, the federal lawsuit in Minnesota was dismissed without prejudice. Upon Defendants' request, the Settlement Agreement was drafted by Great Clips in Minnesota. After receiving the draft agreement, Defendants contacted Great Clips' Chief Legal Officer, Sandra Trenda, in Minnesota, requesting changes and modifications

---

[2]   Prior to the June 12 meeting with Great Clips, Ross had already been in discussions with Fred Grunewald, an existing Great Clips franchisee, regarding the possible sale of Ross's franchises and salons to Grunewald. Grunewald is a resident of Texas and operates GREAT CLIPS® franchises in Texas. Negotiations had apparently begun in February 2012 and the sale to Grunewald closed on June 29, 2012.

to the agreement. After Ms. Trenda made the changes, she sent the revised draft from Minnesota to Defendants. Defendants again contacted Ms. Trenda and requested additional changes—including the insertion of a forum selection clause designating Texas as the appropriate forum for resolving disputes—and sent an executed Settlement Agreement with those changes to Ms. Trenda on June 14, 2012. On June 15, Ms. Trenda emailed Defendants a rejection of their additional proposed changes, along with a revised draft of the Settlement Agreement. Ross signed the Settlement Agreement in Texas, and then emailed it to Ms. Trenda in Minnesota. Great Clips then signed the agreement in Minnesota.

Section 3.1 of the Settlement Agreement contained a confidentiality/non-slander clause. This clause provided that the parties to the agreement were to keep the terms of the agreement strictly confidential and that they were forbidden from slandering each other regarding the circumstances giving rise to the agreement. The Settlement Agreement also contained a "Release and Covenant Not to Sue," providing that neither party would bring suit against the other, except with relation to the obligations and rights set forth within the Settlement Agreement itself.

Sometime in late June, 2012, Great Clips learned that a Dallas newspaper—the Dallas Observer—had obtained a copy of the complaint filed in the Termination Lawsuit and had written an article about Ross and Great Clips. Counsel for Defendants expressed concern regarding the article, and Great Clips stated that it had not spoken with anyone from the Dallas Observer prior to the publication of the article. On July 25, 2012, counsel for Defendants sent a letter to Great Clips' attorneys in Minnesota, asserting that Great Clips had breached the confidentiality/non-slander clause of the Settlement Agreement. Defendants believed (and continue to believe) that Great Clips disclosed certain confidential information and key terms of

3

the Settlement Agreement to third parties, including the reporter from the Dallas Observer and Grunewald. The letter asserted that Cool Otter suffered damages in excess of $100,000, plus $5,000 in attorney's fees, and demanded compensation to avoid litigation. On August 1, 2012, Great Clips filed this lawsuit in the District of Minnesota, seeking a declaratory judgment that it did not breach section 3.1 of the Settlement Agreement.

## II.   DISCUSSION

Defendants move to transfer this action pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure on the ground that venue is not proper in Minnesota. In the alternative, they move to transfer venue to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).

### A. Venue

Defendants assert that venue in this district is improper and that the case should be transferred pursuant to 28 U.S.C. § 1406(a). Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *Id.* § 1391(b)(2). "Venue may be proper in any of a number of districts, provided only that a substantial part of the events giving rise to the claim occurred there." *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995); *see also Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003) ("In making our determination, we do not ask which district among two or more potential forums is the 'best' venue, rather, we ask whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts.").

Great Clips asserts that although the Settlement Agreement itself does not contain a forum selection clause, the forum selection clauses contained within each of the eleven Franchise Agreements apply to this dispute. The applicability of a forum selection clause is "a legal issue of contract construction" for the Court. *Dunne v. Libbra*, 330 F.3d 1062, 1063 (8th Cir. 2003).

4

"[D]etermining the scope of a forum selection clause is a rather case-specific exercise." *Terra Int'l v. Miss. Chem. Corp.*, 119 F.3d 688, 694 (8th Cir. 1997). Each Franchise Agreement contained a forum selection clause, providing that "[a]ny other legal proceeding involving any dispute between the parties must be venued exclusively and solely in federal or state court in Hennepin County, Minnesota." Great Clips focuses on the broad language of these forum selection clauses—particularly the words "any other legal proceeding"—and contends that the clauses apply to even those disputes that do not arise out of or relate to the Franchise Agreements. Great Clips further asserts that the Franchise Agreements are, in fact, connected to the current litigation, because the Settlement Agreement related to the sale of the salons that Defendants operated under the Franchise Agreements, and the allegedly slanderous statements relate to Defendants' behavior in connection with operation of the salons. Defendants argue that the current dispute relates to a potential breach of the Settlement Agreement, not the Franchise Agreements, and thus the forum selection clauses contained in these entirely separate agreements do not apply.

It is undisputed that the Settlement Agreement—which is the agreement at issue in this litigation—does not contain a forum selection clause. It does, however, contain a Minnesota choice-of-law provision, and an integration clause stating that "[t]his Agreement constitutes the entire agreement between the parties and supersedes and replaces all prior negotiations or proposed agreements, written or oral." During negotiations regarding the Settlement Agreement, Defendants proposed a forum selection clause that designated Texas as the appropriate forum for resolving disputes. Great Clips rejected that proposal, but did not suggest an alternative forum selection clause. Considering Great Clips' diligent inclusion of a forum selection clause in each of the eleven Franchise Agreements, and Great Clips' awareness that Defendants did not desire

5

to litigate in Minnesota (as made evident by their attempt to include a Texas forum selection clause in the Settlement Agreement), the absence of a forum selection clause in the Settlement Agreement suggests an intent *not* to designate a forum for resolving disputes regarding the Settlement Agreement. Moreover, the allegedly wrongful activity occurred after the Franchise Agreements terminated on June 15, 2012, so it is unclear how a forum selection clause contained within these terminated agreements would apply to this situation.

Even without an applicable forum selection clause, venue is nevertheless proper in Minnesota because "a substantial part of the events or omissions giving rise to the claim occurred" here. *See* 28 U.S.C. § 1391(b)(2). Defendants correctly note that the Court must focus on their activities, not solely on the activities of Great Clips. *See Woodke*, 70 F.3d at 985. But the Court must also look at all of the events giving rise to the claim when determining whether a substantial part of those events occurred in Minnesota. *See Advanced Logistics Consulting, Inc. v. C. Enyeart LLC*, Civil No. 09-720 (RHK/JJG), 2009 WL 1684428 (D. Minn. June 16, 2009); *see also Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) ("[A] court should not focus only on those matters that are in dispute or that directly led to the filing of the action. Rather, it should review 'the entire sequence of events underlying the claim.'" (citations omitted)).

The issue in this litigation is whether or not Great Clips breached the Settlement Agreement. The Settlement Agreement, entitled "Agreement and Release of Claims," was an agreement that settled existing and future claims, including the claims asserted in the Termination Lawsuit—which was filed in Minnesota. The execution of the Settlement Agreement resulted in a Minnesota federal district court judge dismissing the Minnesota case. Even though Defendants were not specifically aware of the Termination Lawsuit at the time they entered into the Settlement Agreement, they were aware that they were releasing any claims they

6

had against Great Clips, and that Great Clips was releasing any claims it had against Defendants. Because of the forum selection clauses contained within the Franchise Agreements, these claims from which each party was being released were claims that would necessarily have been brought in Minnesota. Thus, Defendants were aware that by signing the Settlement Agreement, existing and potential Minnesota lawsuits were being released—even if they were unaware that such a lawsuit already existed. Minnesota is clearly substantially tied to the events giving rise to the claim in the current lawsuit.

Defendants directed other activities at Minnesota as well. First, Defendants requested that Great Clips—a Minnesota company—draft the Settlement Agreement. Defendants contacted Great Clips' Chief Legal Officer in Minnesota to discuss changes and modifications to the agreement. After some changes were made, Defendants against contacted Great Clips in Minnesota to request additional changes. Defendants sent the executed Settlement Agreement back to Minnesota. Second, Ross bargained for performance that was to occur at least in part in Minnesota. The Settlement Agreement requires that Great Clips pay a certain sum to Ross in consideration for the sale of his salons. Presumably, Great Clips' performance of this promise would occur in Minnesota, where Great Clips is headquartered. Third, when a dispute arose regarding alleged breaches of the Settlement Agreement, Defendants sent a demand letter to Great Clips' counsel in Minnesota.

Finally, there is no indication that the conduct at issue in this case—Great Clips' alleged disclosure of confidential information—occurred anywhere other than in Minnesota. Great Clips asserts that the only people who knew the terms and conditions of the Settlement Agreement were all located in Minnesota, and that any statements made by Great Clips' personnel to any third parties during the relevant time period would have been made while those representatives

were in Minnesota. Moreover, the information that was allegedly wrongfully disclosed was information that was found in the Termination Lawsuit Complaint—a complaint filed on the District of Minnesota's ECF filing system pertaining to a Minnesota lawsuit.

Overall, Defendants conducted enough activities aimed at Minnesota for Minnesota to be a proper forum for litigating this dispute. There is no risk here that Defendants will be "haled into a remote district having no real relationship to the dispute." *Woodke*, 70 F.3d at 985. While the Northern District of Texas may also be a proper venue, the Court looks not at which district is the "best" venue, but rather whether the District of Minnesota has a substantial connection to the claim. *See Setco Enters. Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994). The Court concludes that it does, and so venue in this forum is proper.

**B.  Motion to Transfer**

Defendants move, in the alternative, to transfer this action to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Here, there appears to be no dispute that this case "might have been brought" in the Northern District of Texas.

In considering the convenience of the parties, convenience of the witnesses, and interests of justice, the Court must make a "case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Terra Int'l*, 119 F.3d at 691. "In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Id.* at 695; *see also Graff v. Qwest Commc'ns Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) (stating that the party seeking the transfer must "show that the balance of factors

'strongly' favors the movant" (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947))). The Court should not transfer an action where it "merely shift[s] the inconvenience from one side to the other." *Terra Int'l*, 119 F.3d at 696-97. The decision whether to transfer an action lies within the discretion of the district court. *Everett v. St. Ansgar Hosp.*, 974 F.2d 77, 79 (8th Cir. 1992).

### 1. *Convenience of the Parties*

Defendants assert that because Great Clips' executives regularly visit Texas and that Great Clips maintains a training facility in Texas, transferring this case to Texas would not greatly inconvenience Great Clips. They contend that Ross would be significantly burdened, personally and economically, by traveling to Minnesota because he and his wife, who both work full time, have three young children. They further assert that Ross has been diagnosed "with a serious, life-threatening illness that will require extensive medical treatment" requiring him to remain in Texas. Defendants therefore argue that the inconvenience to Defendants "far outweighs" the inconvenience to Great Clips.

Great Clips argues that Defendants are merely attempting to shift the inconvenience from one party to the other. Great Clips identifies eight Great Clips representatives who are located in Minnesota that would have to travel to Texas for this litigation, and notes that none of these people regularly travel to Texas. Great Clips argues that the travel habits of other Great Clips executives—people who are unrelated to the facts of this case—are irrelevant. Great Clips also asserts that Ross has traveled to Minnesota on at least five different occasions since 2007 in connection with his relationship with Great Clips, and that he has traveled to at least four other locations in connection with his operation of the salons. Moreover, Ross agreed on eleven other occasions that all disputes between the parties would be resolved in Minnesota—thus

undercutting his assertion now that litigating in Minnesota would be too difficult. Finally, Great Clips contends that all of the relevant documentation is located in Minnesota, including Great Clips' emails, drafts of the Settlement Agreement, and Great Clips' correspondence with third parties.

The Court agrees with Great Clips that transferring this case to Texas would merely be shifting the burden from one party to the other. This factor weighs against transferring this case.

### 2. Convenience of the Witnesses

Considerations relevant to this factor include the number of essential nonparty witnesses, their location, and the preference for live testimony. *Graff v. Qwest Comm'cns Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999). This factor is not a contest between the parties as to which one presents a longer list of witnesses located in the potential districts. *Id.* at 1121–22. The party seeking the transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover. *Id.* at 1122. The court must examine the materiality and importance of the anticipated witnesses' testimony and determine whether the forum is convenient for them. *Id.*

Defendants argue that Grunewald and the individuals in his group are located in Texas and not subject to this court's subpoena power. Defendants do not identify any other non-party witnesses. Great Clips, however, provided an affidavit from Grunewald, in which he stated he would be willing and able to travel to Minnesota to provide testimony for trial. Great Clips also asserts that seven identified witnesses reside in Minnesota, and one resides in St. Louis but is willing to travel to Minnesota. These eight witnesses are apparently the people who would be most familiar with the creation and execution of the Settlement Agreement and are those are accused of breaching that agreement.

Overall, this factor does not tip the balance in any particular direction.

### 3. Interests of Justice

The interests of justice typically involve considerations of (1) judicial economy, (2) the plaintiff's choice of forum, (3) comparative costs to the parties of litigating in each forum, (4) the parties' ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict-of-law problems, and (7) advantages of having a local court determine local law. *Terra Int'l*, 119 F.3d at 696.

In arguing that the interests of justice favor transfer, Defendants point to federal court management statistics, indicating that the District of Minnesota is more congested than the Northern District of Texas. Defendants also argue that Great Clips' choice of venue should be given little deference because Texas has more meaningful ties to the case than Minnesota and that Texas has an interest in deciding local controversies. Defendants also make the cursory and unsupported statement that it would be more expensive to litigate the case in Minnesota.

Great Clips states that the plaintiff's choice of forum deserves substantial deference. *See Terra Int'l*, 119 F.3d at 695. Great Clips is a long-time Minnesota resident, and the choice of Minnesota as the forum was not arbitrary or unreasonable. Great Clips also notes that the Settlement Agreement contains a Minnesota choice-of-law provision, and states that it is beneficial to retain a case in the same district as the law which will govern the dispute. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) ("There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."). Because litigation has already begun in this forum, Great Clips asserts that judicial economy favors keeping the case in Minnesota. Moreover, as discussed above, given the number of witnesses who are residents of Minnesota, litigation would be more expensive in

Texas. Finally, Great Clips contends that it is not unreasonable to litigate this dispute here, and that Ross could reasonably expect to litigate a dispute here, because on eleven separate previous occasions, Ross signed contracts with Great Clips containing forum selection clauses designating Minnesota as the venue for all disputes between the parties.

Overall, the Court agrees with Great Clips that the interests of justice do not favor transferring this motion to the Northern District of Texas. Thus, after considering all of the relevant factors, the Court declines to transfer this action from Minnesota.

### III.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' Motion to Transfer [Docket No. 8] is DENIED.

Dated: January 30, 2013

                                                                              s/Joan N. Ericksen
                                                                              JOAN N. ERICKSEN
                                                                              United States District Judge